UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE VAUGHN,<br><br>       Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Case No.: 1:12-cv-00566 - AWI - JLT<br><br>FINDINGS AND RECOMMENDATIONS DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF, DANIELLE VAUGHN |

Danielle Vaughn ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act, and seeks judicial review of the decision denying benefits. For the reasons set forth below, the Court recommends the administrative decision be **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income on January 14, 2009, alleging disability beginning December 18, 2008. (Doc. 12-6 at 2). The Social Security Administration denied her claim initially and upon reconsideration. (Doc. 12-5 at 2, 20). After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on November 8, 2010. (Doc. 12-3 at 33). The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on January 24, 2011. *Id.* at 14. Plaintiff requested review by the Appeals Council of Social Security, which denied review of the ALJ's decision on February 7, 2012. *Id.* at 2-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

1

Plaintiff initiated this action on April 11, 2012, seeking judicial review of the decision. (Doc. 1). On November 1, 2012, Plaintiff filed her opening brief, asserting the ALJ erred evaluating the evidence. (Doc. 16). However, Plaintiff failed to comply with the substantive requirements of an opening brief, and the Court issued an order striking the brief on December 17, 2012. (Doc. 17). Therefore, Plaintiff filed an amended opening brief on January 7, 2013. (Doc. 18). Defendant filed his opposition on January 22, 2013. (Doc. 19). Plaintiff did not file a reply brief.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to establish the claimant is able to engage in substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

**A.    Relevant Medical Evidence**

On February 26, 2008, Plaintiff complained to Dr. Adhir Singh that "her feet are killing her." (Doc. 12-9 at 21). Dr. Singh found Plaintiff had "seven nucleated hyperkeratotic lesions," which he opined caused Plaintiff "pain and difficulty with ambulation." *Id.* Dr. Singh performed debridement on multiple lesions and prescribed Norco for pain. *Id.* He recommended Plaintiff obtain liners for her shoes and use a pumice stone on a daily basis. *Id.*

In April 2008, Plaintiff had more lesions and reported her feet were "getting worse and worse." (Doc. 12-9 at 21). However, Dr. Singh told Plaintiff that under "no circumstances would [he] increase the dosage . . . and she would have to deal with it." *Id.* He recommended she purchase insoles for her shoes. *Id.* In May 2008, Dr. Singh found ten lesions on Plaintiff's feet. *Id.* Plaintiff continued to complain of "severe pain" in June and August 2008. *Id.* at 21-22. She reported that she took "mostly two pain pills a day" and "wishe[d] she could get more." *Id.* at 22. Although Dr. Singh renewed Plaintiff's prescription, he discussed narcotic addiction with Plaintiff and did not increase the medication. *Id.* Dr. Singh debrided the lesions on Plaintiff's feet at each visit. *Id.* at 21-22.

On September 9, 2008, Plaintiff reported that "taking the pain pills twice a day really does not

last long enough," but supplementing the prescription with Advil made her stomach ache. (Doc. 12-9 at 22). Dr. Singh found Plaintiff's lesions were "tender to touch." *Id.* Again, he renewed Plaintiff's Norco prescription, but also gave Plaintiff samples of Nalfon. *Id.* In November 2008, Plaintiff had eight lesions on her feet and told Dr. Singh that she "did not feel any improvement or relief with [the] medication." *Id.* Therefore, Dr. Singh increased her Norco prescription to three pills per day. *Id.* On December 18, 2008, Plaintiff reported taking the Norco every eight hours "gets her through the day and does help a lot." *Id.*

On May 19, 2009, Plaintiff told Dr. Singh she had "significant pain in her feet," but "having them debrided [gave] her significant relief." (Doc. 12-9 at 56). Plaintiff said she took her pain medicine every eight hours "so that she can walk." *Id.* Dr. Singh found twelve hyperkeratotic lesions, which caused "pain and difficulty with ambulation." *Id.* At a follow-up appointment in June, Plaintiff reported she could "barely . . . get by" with the medication and debridement. *Id.*

Dr. Paul Martin performed a consultative psychological examination on June 3, 2009. (Doc. 12-9 at 23-26). Plaintiff told Dr. Martin she suffered from a mental disorder and learning problems. *Id.* at 23. However, Dr. Martin opined Plaintiff was "a poor and unreliable historian." *Id.* He observed Plaintiff "would mumble to herself, state that she didn't know answers to simple questions, behaved as though she was terribly frightened, and also behaved in a regressed, childlike manner." *Id.* Plaintiff reported having physical limitations, and that she needed help with medications and activities of daily living such as preparing meals. *Id.* at 24. Dr. Martin noted Plaintiff [r]ecalled 0 out of 3 words after a brief delay, and found Plaintiff's memory, intelligence, and judgment were impaired. *Id.* Dr. Martin administered IQ and memory tests, but opined the results were inaccurate because "[f]eigning or at a minimum exaggeration of psychiatric symptoms and cognitive impairment was highly likely." *Id.* at 25. He noted Plaintiff's "inconsistent presentation and history raised concerns of malingering," and Plaintiff failed a screening test for malingering. *Id.* Dr. Martin concluded "it is presumed that she has no level of impairment due to the volatile nature of malingering." *Id.*

Dr. Manmeet Shergill performed a consultative internal medicine evaluation on June 7, 2009. (Doc. 12-9 at 27-31). Dr. Shergill noted Plaintiff complained of foot pain, mental illness, being childish, and difficulty learning. *Id.* at 27. Plaintiff described her foot pain as "burning" and a "6/10."

*Id.* at 28. She stated the pain was increased with standing, walking [and] running. *Id.* Plaintiff told Dr. Shergill that she lived with her sister and did not cook, although she occasionally did dishes and helped with home chores. *Id.* at 28-29. Dr. Shergill observed Plaintiff did "not appear to be in any pain when walking," and she had "a very stable gait." *Id.* at 29. Based upon his examination, Dr. Shergill opined Plaintiff did not have a condition that would impose limitations for twelve continuous months. *Id.* at 31. Accordingly, Dr. Shergill concluded Plaintiff had no manipulative or postural limitations, and was able to sit or stand up to six hours. *Id.*

On July 3, 2009, Dr. Garcia completed a psychiatric review technique form, and opined there was insufficient evidence to establish a mental impairment. (Doc. 12-9 at 32).

At appointments in August and October 2009, Plaintiff continued to report "significant pain" in her feet, and Dr. Singh debrided her lesions. (Doc. 12-9 at 56). On December 1, 2009, Plaintiff told Dr. Singh her feet hurt "all the time," whether walking or resting, in spite of taking Vicodin every eight hours. (Doc. 12-10 at 2). Dr. Singh found Plaintiff still had twelve lesions, which he debrided. *Id.* In January 2010, Dr. Singh found new lesions on Plaintiff's right heel, and again performed a debridement. *Id.*

Dr. Kamalulla Yusufzie performed a consultative examination on January 21, 2010. (Doc. 12-9 at 80). Plaintiff reported she had "left foot problems and . . . had a lot of surgery done." *Id.* She told Dr. Yusufzie that she was not able to walk very far, and she used a cane to support her left side. *Id.* Further, Plaintiff told Dr. Yusufzie she was "not able to do her personal needs." *Id.* Dr. Yusufzie observed Plaintiff had "a normal gait" and she was "able to perform finger-to-nose- and heel-to-knee without difficulty." *Id.* at 82. Dr. Yusufzie noted Plaintiff had "a huge callus on the bottom of the sole of the left foot." *Id.* According to Dr. Yusufzie, Plaintiff was limited to standing and walking "up to 4 hours due to feet problems," and she required an assistive device for ambulation. *Id.* at 83. Dr. Yusufzie concluded Plaintiff could sit without limitation; lift and carry 20 pounds occasionally and 10 pounds frequently; and climb, balance, stoop, kneel, crouch, and crawl frequently. *Id.*

On January 31, 2010, Dr. Deborah Digiaro conducted a psychiatric evaluation. (Doc. 12-9 at 84). Dr. Digiaro observed Plaintiff's actions in the waiting room prior to the examination, and noted Plaintiff was "acting childlike, talking to a little teddy bear . . . [and] talking to herself very loudly."

*Id.* Plaintiff reported she had auditory hallucinations, night terrors, and difficulty focusing. *Id.* In general, Plaintiff refused to answer questions and her sister provided information for Dr. Digiaro. *Id.* at 84-86. According to Dr. Digiaro, Plaintiff was malingering, and "appear[ed] to be exaggerating some possible underlying mental condition." *Id.* at 87. Consequently, Dr. Digiaro opined she was unable to offer a functional assessment. *Id.*

Dr. K.J. Loomis reviewed the medical record on February 20, 2010, and opined the evidence that Plaintiff was malingering was "well supported." (Doc. 12-9 at 88-89).

Dr. Singh treated Plaintiff approximately once a month between May and September 2010. (Docs. 13-2, 13-3). In May, Dr. Singh noted Plaintiff had "increased pitting edema to her ankles and also to her lower legs." (Doc. 13-3 at 2). Dr. Singh told Plaintiff he wanted to decrease her medication, but she said "the pain [was] too severe." *Id.* In June and July 2010, Dr. Singh observed Plaintiff's toenails were thickening and she had a new lesion on her right heel, which looked "like a porokeratosis." (Doc. 13-2 at 6). He debrided the lesions, and prescribed for Norco for her pain. *Id.*

Dr. Singh completed a medical source statement on August 12, 2010. (Doc. 12-14 at 34). Dr. Singh reported: "It is my medical opinion that [Plaintiff] is currently disabled and is expected to be disabled for the next 12 months." *Id.* Dr. Singh opined drug and alcohol abuse were not contributing factors, and that Plaintiff was "limited from performing any substantial gainful activity on a sustained basis." *Id.*

On September 9, 2010, Plaintiff told Dr. Singh she used a PedEgg and rubbed Vaseline on her lesions "approximately every other day." (Doc. 13-2 at 5). Dr. Singh noted she had "considerable regrowth of hyperkeratosis on the plantar aspect of her feet," which were essentially the same since July 2010. *Id.*

**B.    Lay Witness Report**

On December 2, 2009, Linda Davis completed a report regarding Plaintiff's abilities. (Doc. 12-7 at 72-79). Ms. Davis reported she had known Plaintiff for four years, and worked with her two to four hours each week, visiting Plaintiff's home to see if she was "following through on meds, bathing [and] children's needs." *Id.* at 72. In addition, she transported Plaintiff to doctor appointment. *Id.*

   According to Ms. Davis, Plaintiff took care of her daughter and son, "who both also have special needs." (Doc. 12-7 at 73). She reported Plaintiff was able to microwave food, and did laundry once a week. *Id.* at 74. In addition, Ms. Davis noted Plaintiff was able to go grocery shopping with assistance, and it took her about thirty minutes to shop. *Id.* at 75.

   Ms. Davis believed Plaintiff was unable to focus and "scared to go outside." (Doc. 12-7 at 75). In addition, Plaintiff reported hearing things to Ms. Davis. *Id.* Ms. Davis believed Plaintiff was limited in her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, see, hear, complete tasks, concentrate, follow instructions, understand, and get along with others. *Id.* at 77. She explained, "Due to all the many problems, [Plaintiff] has become very limited in every single activity from walking to social." *Id.* Ms. Davis believed Plaintiff was able to walk "20 min[utes] or less" and focus for five minutes at most. *Id.*

**C. Plaintiff's Testimony**

   On November 8, 2010, Plaintiff testified before the ALJ at an administrative hearing. (Doc. 12-3 at 31). She reported that she had taken special education classes through high school. *Id.* at 36. According to Plaintiff, she was "not really" able to read and write, but she was able to write simple words. *Id.* at 36-37. Plaintiff said she was not working outside of the home, but took care of her 15-year-old daughter who was missing part of her brain. *Id.* at 37-38.

   Plaintiff did not believe that she was able to work full time, 40 hours per week. (Doc. 12-3 at 40). She stated she did not like to be "places where people talk about [her]." *Id.* at 41. Plaintiff said she received mental health treatment from Dr. Tran, who prescribed medication. *Id.* at 41-42. In addition, Plaintiff reported her feet hurt due to bad calluses. *Id.* at 45, 45. Further, Plaintiff said Hepatitis C affected her liver and made her "tired all the time." *Id.* at 48.

   She stated that she would pass time by watching television shows such as "Batman." (Doc. 12-3 at 45-46). Plaintiff said she relied upon her sister and her sister's boyfriend for transportation. *Id.* at 46. Plaintiff said she was able to prepare meals with a microwave. *Id.* at 47.

**D. The ALJ's Findings**

   Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after filing her application. (Doc. 12-3 at 16). Second, the ALJ found Plaintiff's

severe impairments included: bilateral hyperkeratotic calluses of the feet, hepatitis C, and depression. *Id.* Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing, including Listing 12.02. *Id.* at 16-17.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform a full range of light work as defined in 20 CFR 416.967(b)." (Doc. 12-3 at 17). The ALJ specified:

> She is limited to basic, simple reading and writing of English, simple routine tasks, occasional public contact, sitting six hours and standing or walking two hours each, lifting and carrying 20 pounds occasionally and 10 pounds frequently, no climbing of ladders, ropes or scaffolds, or work around hazards like moving dangerous machinery or unprotected heights, and occasionally climbing ramps or stairs.

(Doc. 12-3 at 17). With this RFC, the ALJ found Plaintiff was able to perform "jobs that exist in significant numbers in the California economy." *Id.* at 24. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 25.

## DISCUSSION AND ANALYSIS

Appealing the opinion of the Commissioner, Plaintiff asserts the ALJ erred in rejecting the opinion of Dr. Singh and failing to give germane reasons to reasons to reject the testimony of Linda Davis. (Doc. 18 at 5-8). On the other hand, Defendant contends rejection of Dr. Singh's statement was proper, and the ALJ considered the lay witness testimony adequately. (Doc. 19 at 15-22).

**A.     Evaluation of the records from Dr. Singh**

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As acknowledged by Plaintiff, Dr. Singh failed to offer a functional capacity assessment. (*See* Doc. 18 at 6). Rather, Dr. Singh offered only the conclusion that Plaintiff was "currently disabled" and was "expected to be disabled for the next 12 months." (Doc. 12-14 at 34). Although the ALJ

gave "substantial consideration" to the treatment notes of Dr. Singh, he gave "little weight" to the opinion that Plaintiff was disabled because it was "a decision reserved to the Commissioner" and "functional limitations are not addressed in this opinion." (Doc. 12-3 at 20).

Significantly, the determination of whether a claimant is disabled is reserved for the Commissioner, and statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. § 404.1527(e). Recently, this Court explained that "an ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). Dr. Singh's belief that Plaintiff was "disabled" is clearly a statement "that would direct the determination or decision of disability." *See* 20 C.F.R. § 404.1527(e). Accordingly, it is an issue reserved for the Commissioner, and the ALJ's decision to give less weight to Dr. Singh's statement was proper.

## B.     Duty to develop the record

Plaintiff contends that the ALJ should have contacted Dr. Singh "to get specific work functional limitations" if he believed Dr. Singh's opinion that Plaintiff was disabled was "too broad [because] it did not quantify limits to standing, walking, and lifting." (Doc. 18 at 7). On the other hand, Defendant contends that the ALJ was not obligated to contact Dr. Singh because his "treatment records were before the ALJ and there was nothing unclear or ambiguous about what they said." (Doc. 19 at 17).

The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the law imposes a duty on the ALJ to develop the record in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Thus, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2201); *see* 20 C.F.R. § 416.912(e).

Here, there were no conflicts or ambiguities to be resolved, nor did the ALJ find the record was

1 insufficient to make a disability determination.  Consequently, the ALJ's duty to develop the record
2 was not triggered.  *See Thomas v. Barnhart*, 278 F.3d 947, 978 (9th Cir. 2002) (duty not triggered
3 when the ALJ did not conclude the medical report was inadequate to make a disability determination);
4 *Mayes*, 267 F.3d at 459-60.  Because the ALJ did not have a duty to develop the record, Plaintiff's
5 assertion that the ALJ erred in failing to contact Dr. Singh is without merit.

**C.     Lay witness testimony**

The ALJ must consider statements of "non-medical sources" including spouses, parents, and persons in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1513(d)(4); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work.").  As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis and internal citations omitted).  To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of the witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  However,

Plaintiff asserts the ALJ, "in silent disregard," passed over the testimony of Ms. Davis that Plaintiff could walk for only 20 minutes before needing to rest. (Doc. 18 at 7-8).  Plaintiff contends "this limitation is inconsistent with medium work, the official RFC, which contemplates standing and walking up to 6 hours per day." *Id.* at 8 (citing 20 C.F.R. § 416.967).  In addition, Plaintiff notes Ms. Davis believed "Plaintiff could pay attention for only 5 minutes at a time."  *Id.*  According to Plaintiff, the ALJ erred by failing to identify germane reasons to reject this testimony.  *Id.*

Defendant argues: "Plaintiff's assertion that the ALJ rejected the third party testimony of Lisa Davis out-of-hand is … unfounded."  (Doc. 19 at 17).  According to Defendant, the ALJ gave "careful consideration" to the statement of Ms. Davis.  *Id.* at 18.  Defendant observes, "The ALJ considered Ms. Davis' statements regarding Plaintiff's potential ambulatory restrictions, referencing them in his decision, and accepted them to the extent that they were consistent with the totality of the record. . ." *Id.* at 21.  However, statements from Ms. Davis that were similar to Plaintiff's subjective complaints were rejected for the same reasons as Plaintiff's credibility.  *Id.* at 18-19.  Defendant notes that "the

1  ALJ can use the same reasons to discount a claimant's credibility to discount a lay witness." *Id.* at 18
2  (citing *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th
3  Cir. 2009)). Defendant concludes the ALJ was not "required to provide express reasons for rejecting
4  lay witness testimony regarding Plaintiff's purported psychological and cognitive symptoms, which
5  conflicted with medical expert opinion and record evidence." *Id.* at 22.
6        The ALJ noted two physicians "diagnosed malingering on the part of the claimant." (Doc. 12-
7  3 at 16). In addition, evaluating the credibility of Plaintiff's subjective complaints, the ALJ found
8  Plaintiff's "alleged inability to work because of mental illness" was inconsistent with her daily
9  activities. *Id.* at 19. The ALJ noted Plaintiff reported in an assessment that "without help from others,
10 she cares for her two children who both have their own mental health problems." *Id.* at 19. In
11 addition, Ms. Davis reported Plaintiff "takes care of her son and daughter who both have special
12 needs." *Id.* The ALJ observed Ms. Davis reported Plaintiff was "able to prepare her own meals," do
13 laundry each week, and go shopping once a month. *Id.* These activities are valid considerations in the
14 course of a credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)
15 (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's
16 testimony and her conduct, and a claimant's daily activities when weighing the claimant's credibility);
17 *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Consequently, the statements of
18 Ms. Davis may be rejected for the same reasons. *See Valentine*, 574 F.3d at 694 (explaining when an
19 ALJ states clear and convincing reasons for rejecting the subjective complaints of a plaintiff, and third
20 party testimony is "similar to such complaints," the reasons set forth for rejecting the plaintiff's
21 testimony may be germane reasons for rejecting similar testimony of the third party).
22       Further, the facts before the Court are similar to those in *Bayliss*, in which the plaintiff argued
23 the ALJ improperly rejected portions of lay witnesses' testimony. *Bayliss v. Barnhart,* 427 F.3d 1211,
24 1211 (9th Cir. 2005). There, the ALJ accepted testimony of a lay witness "that was consistent with the
25 record of [her] activities and the objective evidence in the record; he rejected portions of their
26 testimony that did not meet this standard." *Id.* The Ninth Circuit found "inconsistency with medical
27 evidence is one [germane] reason" because "rejection of certain testimony was supported by
28 substantial evidence." *Id.* Likewise, here, the ALJ rejected only portions of Ms. Davis' statement, and

the residual functional capacity determined by the ALJ is supported by substantial evidence in the record, including the opinions of Drs. Martin, Shergill, and Yusufzie.[1]

### FINDINGS AND RECOMMENDATIONS

As explained above, the ALJ's decision to give less weight to Dr. Singh's statement was proper, because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. § 404.1527(e). Further, the duty to develop the record and recontact Dr. Singh was not triggered, because there were no conflicts or ambiguities to be resolved. *Thomas*, 278 F.3d at 978. Any error in failing to specifically discuss the portions of Ms. Davis' opinion rejected is harmless, because the ALJ's well-supported reasons for rejecting Plaintiff's testimony apply equally well to the lay witness testimony of Ms. Davis. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694.

Because the ALJ applied the proper legal standards and the findings are supported by substantial evidence, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. The decision of the Commissioner of Social Security be **AFFIRMED**; and
2. The Clerk of Court be DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Danielle Vaughn.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the Objections shall

---

[1] The opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, Drs. Martin, Shergill, and Yusufzie each conducted examinations of Plaintiff, and set forth their opinions based upon testing administered in the course of the examination. Consequently, their opinions are substantial evidence. Notably, Plaintiff has not challenged the ALJ's evaluation of these opinions.

1  be filed and served within fourteen days of the date of service of the Objections.  The parties are
2  advised that failure to file objections within the specified time may waive the right to appeal the
3  district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

5  IT IS SO ORDERED.

6  Dated:    **February 22, 2013**                            **/s/ Jennifer L. Thurston**
7                                                                 UNITED STATES MAGISTRATE JUDGE